IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| COUNCILL, GEORGE & JANET | § | CASE NO. 05-91470-H1-7 |
| | § | (Chapter 7) |
| Debtors | § | |

### TRUSTEE'S STATUS REPORT AND PROPOSED DEADLINES

To the Honorable Marvin Isgur,
United States Bankruptcy Judge:

COMES NOW William G. West, Chapter 7 Trustee for the above-referenced and entitled bankruptcy estate, and files this *Trustee's Status Report and Proposed Deadlines*, and would respectfully show as follows:

### STATUS

1. On or about October 14, 2005, George and Janet Councill ("Debtors") filed for protection under Chapter 7 of the United States Bankruptcy Code.

2. On or about July 25, 2006, Debtors filed a complaint under Adversary No. 06-3501 against Amway Corporation and Quixtar, Inc. (collectively "Defendants") seeking injunctive relief for conduct in violation of the automatic stay and contempt. The Debtors alleged "Defendants withheld Plaintiff's monthly earned income from their AMWAY/Quixtar business December 2004 through July 2006." However, the Debtors' initial Schedules have no reference to any monthly income or bonuses owing to them by Amway or Quixtar. The Schedules only referenced a class action case in which the Debtors are plaintiffs and which is currently on appeal to the Fifth Circuit.

3. On January 18, 2006, after the Trustee discovered the Debtors had a potential asset related to bonus amounts due to the Debtors' Quixtar business, the Debtors amended their Schedule "B" to reflect an accounts receivable. The account receivable was described as:

    a. Amway business monthly bonus that averaged about $2,100.00 a month. This has not been received in over a year, but the debtor believes that it is still owed.

4. The Debtors' Schedule "C" does not claim the bonuses are exempt, and the Debtors' Schedule "I" does not reflect any income from Quixtar or Amway.

5. After the 341 Meeting, the Debtors furnished the Trustee with statements of account for the Quixtar business for January 2005 through December 2005 and a copy of correspondence from Christy Carlton, Legal Assistant. Ms. Carlton's letter was on Quixtar letterhead informing the Debtors that bonuses owed to the Debtors for their Quixtar Independent Business would be withheld to satisfy a JAMS arbitrator award.

6. The Trustee's counsel attempted to contact Ms. Carlton via telephone to discuss turnover of the funds. Ms. Carlton stated that she needed a couple weeks to look into the issue. After receiving no response, on or about March 7, 2006, the Trustee's counsel sent a written demand to Quixtar for all sums owing through December 2005. The complaint filed by the Debtor only sought recovery of the bonuses that became owing post-petition.

7. On March 15, 2006, the demand to Quixtar was copied to Debtors' counsel with a request for additional information showing the value of the Debtors' Quixtar business, because the only information that was provided to the Trustee up to that date were the bonus statements for January 2005 through December 2005. The Debtors did not provide any supplemental documentation until after this adversary was filed, despite numerous requests for additional documentation.

8. On or about April 7, 2006, in response to the Trustee's demand to Quixtar, the Trustee's counsel was contacted by counsel for Alticor, Quixtar and Amway.

9. Upon information and belief, Alticor, Inc. is the parent company of three distinct and separate companies: Amway Corporation, Quixtar, Inc., and Access Business Group. In response to their counsel, Trustee's counsel requested any contracts or agreements between the Debtor and Amway that may effect the value of the Debtors' Quixtar IB.

10. The description of the Debtors' business as "Amway Business" on their Schedules appears to be inaccurate.[1] From what the Trustee can discern through investigation, it appears that the Debtors have been involved with Amway since 1989 and Quixtar since 1999. The statements provided by the Debtors show that the bonuses are owed by Quixtar for the Debtors' Quixtar Independent Business.

11. The Debtors are plaintiffs in a suit entitled *Morrison et al. v. Amway et al.,* Civil Action No. H-98-0352 ("Amway Suit") which was filed on or about January 6, 1998 in Texas State Court. The Defendants[2] in that matter removed the suit to federal court and, despite strenuous objection from Plaintiffs that there was not a binding arbitration agreement, the Federal District Court for the Southern District of Texas compelled arbitration. The underlying Amway suit was summarized by Judge Melinda Harmon's opinion compelling arbitration:

---

[1] In 1999, there were corporate changes in which Alticor, Quixtar and Amway succeeded to the interest formerly held solely by Amway Corporation. The Debtors apparently became Amway members back in 1989, and then added the Quixtar business in October 1999.

[2] Quixtar does not appear to ever have been joined as a party to the *Morrison, et al. v. Amway, et al.* suit.

> In this case, the Plaintiffs, *inter alia,* have a disagreement with how profits are determined with regard to the motivational and other business support materials. The Plaintiffs have sued Amway as well as other distributors in their respective "up-line" for a myriad of claims ranging from defamation to RICO. Three suits filed in this District have been consolidated.
>
> *Morrison v. Amway Corp.*, 49 F.Supp.2d 529, 531–32 (S.D.Tex. 1998).

12. Debtors are currently appealing the initial order compelling arbitration and a judgment entered on an Amway-trained arbitrator's award by which both sides took nothing but each side was made liable for the other side's attorney fees. The effect of the arbitrator's ruling was to make Plaintiffs jointly and severally liable for over $6,000,000.00 in attorney fees. The award was confirmed by the district court, in part, and has been appealed.

13. The Debtors had a Quixtar Independent Business whereby the Debtors added the business. Quixtar is not listed as a party to the Arbitrator's Final Award.

14. On May 2, 2007, the Fifth Circuit Court of Appeals heard arguments on the merits of the appeal. As of the date of this Report, the Fifth Circuit has not issued a determination as to the ownership of the funds at issue.

15. The Trustee's has reviewed claims and at this time believes no objections will be necessary.

## UNUSUAL CIRCUMSTANCES AND PROPOSED DEADLINES

16. As the Trustee's Final Report and distribution of funds is dependent upon the Fifth Circuit's ruling, the Trustee's Final Report has not been submitted to the U.S. Trustee at this time. The Trustee proposes the following deadlines

    Filing Professional Fee Applications:    July 1, 2008
    Submission of Final Report to UST:       October 1, 2008

    WHEREFORE, PREMISES CONSIDERED, the Trustee prays this Court accept this Status Report.

Respectfully Submitted,

**WALDRON & SCHNEIDER, L.L.P.**


 /s/ Kimberly A. Bartley
Marc H. Schneider
State Bar No. 17788010
marcs@ws-law.com
Kimberly A. Bartley
State Bar No. 24032114
kbartley@ws-law.com
University Park
15150 Middlebrook Drive
Houston, Texas 77058
Tel:  (281) 488-4438
Fax: (281) 488-4597
COUNSEL FOR CHAPTER 7 TRUSTEE,
WILLIAM G. WEST


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Trustee's Status Report and Proposed Deadlines* was served on the U.S. Trustee via either First Class U.S. Mail or electronically on this the 31st day of August, 2007.

   /s/ Kimberly A. Bartley
Kimberly A. Bartley